CLAUDE H. PALMER

v.

AUGUSTA PALMER.

[Decided August 19th, 1915.]

1. The power of the chancellor, as *parens patriae*, to control the custody of an infant, is sometimes invoked by the issuing of a writ of *habeas corpus* as the means of bringing the parties before him, and the proceeding is one in the court of chancery.

2. The writ of *ne exeat* is in the nature of equitable bail, and ordinarily issues only upon an equitable claim of a pecuniary nature in an amount certain, or to secure the payment of alimony to a wife.

3. A *ne exeat* will issue to secure the enforcement of a marital duty other than the pecuniary demand for alimony, and the issuance of the writ in matrimonial causes is not restricted to securing the payment of alimony alone.

4. *Semble:* A *ne exeat* will issue from the necessity of a given case to prevent the failure of justice.

5. A *ne exeat* may be issued in aid of any other chancery process, including *habeas corpus* whereon an infant is brought into court by one parent at the suit of the other, to keep the parent having the custody of the child within this state to answer the exigencies of an order for access to the minor by the other parent.

6. The court of chancery will make a precedent to fit a case, novel in incident, which comes within some head of equity jurisprudence.

On application for a *ne exeat* in aid of a *habeas corpus*.

*Messrs. Collins & Corbin,* for the petitioner.

WALKER, CHANCELLOR.

A writ of *habeas corpus* having issued out of this court directed to the defendant, Augusta Palmer, commanding her to have the body of Virginia Angelina D. Palmer, the infant child of herself and the petitioner, before this court to submit to and receive whatever the chancellor should consider in that behalf, such proceedings were had in the cause that it was ordered, adjudged and decreed that until the further order of the court the custody of the minor child be awarded to the defendant, and that the petitioner have access to such child at the residence of the father of the defendant on certain days and times therein specified. The defendant thereafter disobeyed the decree by refusing access by the petitioner to his infant daughter, and she subsequently left the State of New Jersey with the child. Afterwards she returned to this state with the child and located at her parent's home. These facts being made to appear by affidavit, the petitioner applied for a writ of *ne exeat* against the defendant until she should purge herself of the contempt alleged against her for refusing the petitioner access to their child and should fully respond to any order this court might make touching the custody of the infant. And the question is, shall the writ of *ne exeat* be issued?

The power of the chancellor, as *parens patriae,* to control the custody of an infant, is sometimes invoked by the issuing of a writ of *habeas corpus* as the means of bringing the parties before him. *Buckley* v. *Perrine, 54 N. J. Eq. 285, 292.* And this proceeding is one in the court of chancery. *S. C. on appeal, 55 N. J. Eq. 514, 516.* The case at bar is such a proceeding.

The writ of *ne exeat* is in the nature of equitable bail, and ordinarily issues only upon an equitable claim of a pecuniary nature in an amount certain, or to secure the payment of alimony to a wife.

Whether Chancellor Williamson, in *Yule* v. *Yule, 10 N. J. Eq. 138,* when he said (at *p. 141*) that in a case between husband and wife the *duty* should be certain, intended to intimate that *ne exeat* would issue to secure the enforcement of a marital

duty other than the pecuniary demand for alimony, which (alimony) was the question at issue in that case, I cannot say; but I think the use of the writ in matrimonial causes is not restricted to securing the payment of alimony alone.

In *Porter* v. *Spencer, 2 Johns. Ch. 169*, a matter of account in the New York court of chancery, where the defendant had been sued at law and given bail and was about to remove out of that state with his bail, who had sold all his property, Chancellor Kent somewhat hesitatingly issued a *ne exeat* from the necessity of the case and to prevent a failure of justice.

A *ne exeat* may be issued in aid of an injunction. *Hays* v. *Willio, 11 Abb. Pr. (N. S.) 167* (reversed on other grounds, *4 Daly 259*). And a *ne exeat* and an injunction may be issued together. *Bryson* v. *Petty, 1 Bland. (Md.) 177 (note at p. 182)*. This doctrine was recognized in *Williams* v. *Williams, 3 N. J. Eq. 130*, where an injunction was issued but a *ne exeat* was denied.

If a *ne exeat* may issue in aid of an injunction, it may, on principle, issue in aid of any other chancery process. It was issued in aid of a commission to inquire into drunkenness—*In re J. Watts Kearney, Jr. (docket 21, page 476)*—where, in affidavits annexed to the petition for the commission, it appeared that the subject of the proceeding intended quickly to depart from this state.

After Kearney had been adjudged an habitual drunkard by the court of chancery, and being in the county jail upon a writ of *ne exeat*, awaiting the appointment of a guardian by the orphans court of the county, a writ of *habeas corpus* was allowed by Mr. Justice Lippincott of the supreme court, who held—*In re J. Watts Kearney, Jr., 21 N. J. L. J. 25* (at *p. 26*), that "the court of chancery has jurisdiction over the person and property of the petitioner as an habitual drunkard, and can keep him within its jurisdiction by the writ of *ne exeat*. The writ is regular and proper on its face. The statute confers express jurisdiction, and the power would be useless unless control over the person could be exercised. The court of chancery interpreted this statute and found power to issue this writ."

The statute referred to was the act relative to habitual drunkards, conferring jurisdiction upon the court of chancery over the person and property of such drunkards (*Comp. Stat. p. 2797 § 25 et seq.*), and not any statute concerning the writ of *ne exeat,* as we have no such statute. And Mr. Justice Lippincott also very properly held that a supreme court justice would not review the orders and decrees of the court of chancery; that being the province of the court of last resort.

Assuming that there is no precedent for the issuance of a *ne exeat* to keep a parent within this state to answer the exigencies of an order for access to a minor child by the other parent, no obstacle to the jurisdiction of this court to order the issuance of the writ is presented, for chancery will make a precedent to fit a case, novel in incident, which comes within some head of equity jurisprudence. *Earle* v. *American Sugar Refining Co., 74 N. J. Eq. 751* (at *p. 761*), and cases cited.

As in the case *In re J. Watts Kearney, supra,* this court has jurisdiction over the parties before it in this case and can keep the contumacious defendant within its jurisdiction by a writ of *ne exeat,* so as to compel obedience to its order for the father's access to the infant child of the parties.

Let a writ of *ne exeat* be issued accordingly.