WILLIAM C. RENWICK

v.

JULIA BOOTH HAY.

[Decided March 6th, 1919.]

1. Where a complainant and defendant claim rights created by numerous conveyances made as a part of a common scheme, in or over lands of each other, and there is no adequate remedy at law, and no method by which the legal rights of the parties may be settled at law, a bill may be maintained in a court of equity to settle and determine the conflicting rights, in analogy to a bill of peace.

. 2. *Hart* v. *Leonard, 42 N. J. Eq. 416*, and the cases following it, cannot be considered as authority for the proposition that there are no cases in which a court of equity would have jurisdiction, involving the protection of legal rights in real estate other than those which fall precisely within the nine classes mentioned in *Hart* v. *Leonard*.

3. It is impossible to lay down a rule that a court of equity has no jurisdiction in cases other than those particularly enumerated unless the test applied is that the court has no jurisdiction, ordinarily, where there is an adequate remedy at law.

4. The want of a precedent will not prevent a court of equity from entertaining jurisdiction. *Earle* v. *American Sugar Refining Co., 74 N. J. Eq. 756; Palmer* v. *Palmer, 95 Atl. Rep. 241; Allen* v. *Distilling Co., 87 N. J. Eq. 531*, followed.

5. In a case in which the court of chancery has jurisdiction to grant relief such as a case to enjoin interference with a right of way over private lands, although the court may not proceed to final decree until the legal right is settled at law, jurisdiction may be entertained under the provisions of the Chancery act of 1915, section 7, and the issue sent to law for trial.

6. Under the provisions of section 7 of such act, considered in conjunction with section 9, the rights cognizable in equity, referred to in section 7, include not only substantive but remedial rights.

On motion to strike out bill.

*Mr. Harrison P. Lindabury,* for the motion.

*Mr. Dougal Herr,* opposed.

LANE, V. C.

The bill prays for a determination of the rights of the parties in certain private ways or roads. It is impossible to comprehend the exact situation without reference to a sketch annexed to this opinion, viz.:

By deed dated October 22d, 1881, George W. Allen, who was at the time the owner of all of the property marked on the sketch as plots 1, 2, 3, 4, 5 and 6, conveyed to John P. Allen the property marked plot 1. The deed contained the following provision:

"The above described premises are conveyed expressly subject to a perpetual right of way over so much of the same as is included in the alley or driveway of twelve feet in width surrounding the said premises on all sides save the front on New England avenue, the boundary lines of which said premises as above set forth constitute the middle line of said alley or driveway, said alley or driveway to be common to all and every the owners and occupants of the premises lying adjacent to and abutting on said alley or driveway. And the party of the first part (Allen) hereby conveys to the party of the second part his heirs and assigns a perpetual right of way from and to said New England avenue through and over the said alley or driveway in common with the said' owners and occupants."

John P. Allen, on April 17th, 1883, conveyed the last-mentioned premises, referred to as plot 1, to Julia Booth Hay, subject to the same conditions. On June 30th, 1885, George W. Allen conveyed plots marked 3 and 4 on the sketch to Ophelia G. Riley; the deed containing the following clause:

"The above described premises are conveyed expressly subject to a perpetual right of way over so much of the same as is included in the said carriage roads, the same being twelve feet in width surrounding the said premises on all sides save the front on New England avenue, the boundary line of which said premises as above set forth, except on New England avenue, constitute the middle lines of said carriage roads; said carriage road to be common to all and every the owners and occupants of the premises lying adjacent to and abutting on said carriage roads respectively, and the parties of the first part hereby grant and convey to the party of the second part, her heirs and assigns a perpetual right of way from and to said New England avenue through and over the said carriage roads in common with said respective owners or occupants."

Ophelia G. Riley, on April 10th, 1890, conveyed the property marked plot 4 to John Elliott Sergeant, who died, leaving his property to his widow, Caroline H. Sergeant, who, on March 26th, 1910, conveyed to complainant. This deed contains the following provision:

"It being intended hereby to convey a lot ninety feet in width of the southerly part of the premises which were conveyed to Ophelia G. Riley by George W. Allen and wife by deed dated June 30th, 1885, * * * together with the right of way mentioned in and granted by the aforesaid deed to Ophelia G. Riley."

The ninety feet took the land to the middle of the way between plots 4 on one side and 5 and 6 on the other. By deed dated February 15th, 1896, Ophelia G. Riley conveyed to Julia Booth Hay the plot marked 3. The deed contains the following provision:

"The above described premises are conveyed expressly subject to a perpetual right of way, over so much of the same as is included in the said carriage roads, the same being twelve feet in width, on two sides of said premises, the boundary lines of which said premises as above set forth, except on New England avenue, constitute the middle lines of said carriage roads, said carriage roads to be common to all and every the owners and occupants of the premises lying adjacent to and abutting on said carriage road respectively; and the party of the first part hereby grants and conveys to the said party of the second part, her heirs and assigns, a perpetual right of way from and to said New England avenue, through and over the said carriage roads in common with the said respective owners or occupants."

By deed dated March 31st, 1884, George W. Allen conveyed to John S. Porter in trust the property marked plot 6. The deed contains the following provision:

"And the said parties of the first part and second part hereto for themselves, their heirs, executors and assigns hereby covenant and agree that a carriage road of the width of ten feet and extending five feet on each side of the westerly boundary line of the lot hereby conveyed and of the width of twelve feet and extending six feet on each side of the northerly boundary line of said lot shall be kept open and used in common as a private carriage way for the owner or owners for the time being of the lot hereby conveyed and of the owner or owners of the lots of land adjoining on the westerly and northerly sides thereof, and this covenant shall run with the land and be a perpetual easement in favor of such respective owners."

Title to this plot finally became vested in 1914 in complainant, Renwick, the deed by which he acquired title containing the following:

"Together with the right to use both of said carriage roads, one of which is ten feet in width and the other twelve feet in width, and both of which are established by covenants creating perpetual easements in common with the other owners of land abutting on the same and subject to the rights of such other owners to the common use of the whole of said roads, and also togther with the right, title and interest of the party of the first part in the northerly half of Springfield avenue to the middle thereof where it bounds the lands described."

By deed dated February 17th, 1886, Allen conveyed to the New York Wall Paper Company the lands marked plot 2, together also with other lands. Title to this plot marked 2 finally became vested, by deed from the New York Wall Paper Company in 1886, in Julia Booth Hay. It therefore appears that Julia Booth Hay owns plots 1, 2 and 3; complainant, Renwick, plots 4 and 6.

It is the contention of complainant that he and the abutting property owners have the right to use the carriage way between plot 4 on one side and 5 and 6 on the other, and the carriage way extending from Springfield avenue to a point in the middle line of the carriage way between plot 4 on one side and plots 5 and 6 on the other, to the exclusion of defendant, Julia Booth Hay, and that defendant, Julia Booth Hay, has the right to use the carriage way surrounding plot 1 and between plots 2 and 3 to the exclusion of complainant, and that the carriage way between plots 2 and 4 should be closed, the owner of plot 4, complainant, being entitled to possession of that por-

tion of the carriage way adjoining plot 4 to the middle line, and the owner of plot 2, defendant, being entitled to that portion of the carriage way adjoining plot 2 to the middle of the line. It is set forth in the bill that defendant, Hay, insists that complainant has no right to use the carriage way surrounding plot 1 and that between plots 2 and 3, yet that she has the right to use the carriage way between plot 4 on the one side and plots 5 and 6 on the other, as well as the carriage way between plots 2 and 4, although her line does not abut upon the carriage way between plot 4 on the one side and plots 5 and 6 on the other. By an amendment to the bill complainant sets up that the parties have by their acts put a practical construction upon the conveyances creating the easements and have fixed their rights as contended for by him; that defendant, Hay, did in fact on one occasion erect a fence along the middle of the carriage way between plots 2 and 4, which fence, however, has now been removed. The bill charges that there is a community of interest in the parties in the use of these respective easements and prays for a decree settling the rights of the parties.

It is well settled that a substantial legal dispute over a private right of way in land is not ordinarily cognizable in a court of equity and that the rights of parties in private ways both as to the existence of the right and its extent, must be settled at law before a court of equity can intervene. *Hart* v. *Leonard, 42 N. J. Eq. 416; Todd* v. *Staats, 60 N. J. Eq. 507; Mason* v. *Ross, 77 N. J. Eq. 527; Imperial Realty Co.* v. *West Jersey and Seashore Railroad Co., 79 N. J. Eq. 168,* all cases in the court of errors and appeals and all reversing this court. In *Hart* v. *Leonard,* Mr. Justice Dixon, writing the opinion for the court of errors and appeals, said: "No doubt many cases arise in which courts of equity may, by decree and injunction, protect and enforce legal rights in real estate. So far as they are exemplified in our chancery practice, these cases can, I think, be classified under the following heads;" and he then classifies nine distinct heads. I do not conceive that there may not be cases, cognizable in equity, which do not fall strictly within any one of the nine classes mentioned by Mr. Justice Dixon. The reason given by Mr. Justice Dixon for the lack of jurisdiction in equity,

in other than the classes referred to by him, is that the appropriate remedy is by suit at law. A well-recognized form of equitable remedy is a bill of peace. *2 Story Eq. Jur.* (*11th ed.*) §§ *852, &c.; Pom. Eq. Jur.* § *1394; 2 Eq. Rem.* §§ *723, &c.; Pom. Eq. Jur.* §§ *245, 255, 260.* While bills of peace are ordinarily brought to establish and settle a right which complainant claims and which from its nature may be controverted by different persons, at different times and at different occasions, or where separate attempts have all been unsuccessfully made to overthrow the same rights and justice requires that the parties should be quieted in the right if it is already sufficiently established or if it should be sufficiently established under the direction of the court (*Story* § *853,* and see examples of such bills, sections 855, 856), yet it would seem that a bill analogous to a bill of peace may lie even where there may not be many defendants. *Sharon* v. *Tucker, 144 U. S. 533; 36 L. Ed. 533.* In that case the supreme court of the United States sustained a bill brought by persons, claiming ownership of property by adverse possession, to enjoin the assertion of title by defendants to the same property deriving title from former owners. The court based the jurisdiction upon the power of the court to perfect and complete the means by which the right, estate or interest of the party—that is, their title, may be proved or secured or to remove obstacles which hinder its enjoyment, citing *1 Pom. Eq. Jur.* § *171.* It distinguished the case before it from the ordinary bill *quia timet* or a bill of peace. It based the jurisdiction primarily upon the absence of a remedy at law available in the particular case. Neither ejectment nor trespass would lie, and if complainants had no relief in equity there would always be doubt as to their title. The jurisdiction did not rest upon statute. In a note to *2 Story Eq. Jur.* (*11th ed.*) § *855,* Lord Redesdale is reported to have said, in referring to the jurisdiction of equity to prevent multiplicity of suits, that if the possession of complainant had not been actually interrupted or dispossessed so that he has had no opportunity of trying his right, he may bring a bill to establish it, though he has not previously recovered in affirmance of it at law. In *Van Horne* v. *Clark, 56 N. J. Eq. 473,* the chancellor (McGill), citing cases, said that the regulation of the

enjoyment of mutual rights in a common easement is within the cognizance of a court of equity. And see *Public Service Railroad Co.* v. *Frazer, 87 N. J. Eq. 679.* In the case *sub judice* the rights of the parties spring from a number of conveyances. There is a common interest of both parties in the lands of the other. The easements are to be enjoyed in common. There is no remedy at law. Ejectment cannot be maintained, for there is no dispossession, nor can trespass. Defendant is not now using, and has not for a long period of time, if at all, used, the ways that complainant insists she is not entitled to use, nor has complainant used the ways defendant insists he is not entitled to use. The rights of the parties may depend upon the testimony of witnesses as to the conduct of the parties. This testimony may be lost. Unless a suit such as that now brought can be maintained, complainant is as remediless as were complainants in the case of *Sharon* v. *Tucker, supra.* It seems to me that the bill may be maintained upon general principles of equity.

The point actually decided by the court of errors and appeals in *Hart* v. *Leonard, supra,* was that this court would not interfere by injunction to restrain a defendant from obstructing an alleged private way over land, prior to the legal right being settled at law, it appearing that there was no difficulty in having the legal right determined at law. Mr. Justice Dixon, then, after recognizing that there are many cases in which courts of equity may, by decree and injunction, protect and enforce legal rights in real estate, classified such cases as "are exemplified in our chancery practice" under nine heads. This remark then follows: "Outside of these classes there is no jurisdiction in a court of equity over the invasion of mere private legal rights in lands. The appropriate remedy is by suit at law." That case may be considered as authority for the proposition actually decided that this court cannot, where there appears to be no difficulty in settling the legal right at law, proceed to enjoin a defendant from obstructing an alleged private way over his lands, and that cases coming within the nine classes referred to by Mr. Justice Dixon, where the protection of private rights in lands are involved, are within the jurisdiction of the court. It cannot, as I conceive it, be considered as authority that there are

no cases, involving the protection of private rights in land, in which this court would have jurisdiction unless they fall within the nine classes referred to. He merely classified those cases in which jurisdiction has been sustained theretofore exemplified in our chancery practice. The remark following the classification that in other cases the appropriate remedy is by suit at law, indicated, quite clearly it seems to me, that Mr. Justice Dixon did not intend to hold that there might not be cases in which a court of equity would have jurisdiction, involving the protection of legal rights in real estate, other than those which might fall within the nine classes. It is, of course, possible to determine that a court of equity has jurisdiction in particular classes of cases and to determine that it has no jurisdiction in particular cases, but I think it impossible to lay down a rule that a court of equity has no jurisdiction in other cases than those particularly enumerated, unless, of course, the test applied is that the court has no jurisdiction ordinarily where there is an adequate remedy at law, for, after all, that is the test of equitable jurisdiction. *Thropp* v. *Public Service Electric Co., 84 N. J. Eq. 144* (at *p. 146*) ; *Allen* v. *Distilling Co. of America, 87 N. J. Eq. 531* (at *p. 543*). I have examined every case subsequent to *Hart* v. *Leonard,* in which that case is cited, and can find none involving the protection of legal rights in land, where relief has been denied, where it has not appeared that there was an adequate remedy at law or that, while the ultimate remedy at law may not have been adequate, yet there was no difficulty in having the question of legal right determined at law, in which latter class of cases the court retains the bill until the legal right is settled. As I have pointed out elsewhere in this opinion, I can conceive in the case at bar of no adequate remedy at law, nor does it appear that there is any method by which the legal title can be settled at law. The instant suit is not brought for the protection of legal rights in lands as ordinarily understood. Its purpose is to determine and settle rights in land. The wrong against which complainant complains is the unsettled state of his rights in lands and in common ways due to conflicting claims on the part of defendant, growing out of a number of conveyances, and there is no method known to the law by which

these conflicting rights may be settled. The case, as I have else-where stated, is, I think, analogous to *Sharon* v. *Tucker, supra.*

The want of a precedent will not prevent this court from en-tertaining jurisdiction. *Earle* v. *American Sugar Refining Co.,* *74 N. J. Eq. 756* (at *p. 761*); *Palmer* v. *Palmer, 95 Atl. Rep.* *241* (at *p. 243*); *Allen* v. *Distilling Co. of America, supra.*

I think the bill also may be maintained under the provisions of the Chancery act of 1915. Section 7 of that act provides:

"Subject to rules, any person claiming a right cognizable in a court of equity, under a deed, will, or other written instrument, may apply for the determination of any question of construction thereof, in so far as the same effects such right, and for a declaration of the rights of the persons interested."

This section of the statute was considered by the chancellor in *Re Ungaro, 88 N. J. Eq. 25*. The chancellor drew attention to the fact that the statute provides that it should be liberally construed, and that what the legislature meant by "a right cog-nizable in a court of equity," in his judgment, was a right over which, in and of itself, the court had jurisdiction and that it was intended that the jurisdiction should be exercisable where the right was present, although an accompanying circumstance, the presence of which theretofore alone permitted the right to be declared, was absent. The section was also considered by Vice-Chancellor Backes in *Trenton Trust and Safe Deposit Co.* v. *Cook, 88 N. J. Eq. 516.* The right asserted by complainant is, I think, one cognizable in equity within the meaning of the statute. Equity has jurisdiction to settle conflicting rights in common easements. *Public Service Railroad Co.* v. *Frazer, supra; Van Horn* v. *Clark, supra.* It likewise has jurisdiction to settle title, and to ascertain the extent of a legal right and enforce or protect it, in a manner not obtainable by legal procedure. In *Todd* v. *Staats, 60 N. J. Eq. 507*, the court of errors and appeals re-versed the decree of the chancellor dismissing the bill, and held that the proper course for the chancellor to pursue was to retain the bill until the complainants had reasonable opportunity to es-tablish their title at law. If defendant, Hay, had prevented the use by complainant of the ways, the right to use which is claimed

*90 N. J. Eq.*        Renwick *v.* Hay.

by her to be exclusive in her, a bill might have been filed for re- lief. If defendant, Hay, used the ways, the right to use which is claimed by complainant to be exclusive in him, a bill might have been filed to enjoin continuous trespass. In neither event, how- ever, would the court have proceeded to final decree until the right was settled at law, because, in each instance, the right might easily be settled at law. The circumstances may not be present which, before the passage of the act of 1915, would have permitted a court of equity to proceed, but the right in each in- stance is, I think, existent and cognizable in equity. It seems to me that sections 7, 8 and 9 of the Chancery act of 1915 must be read together. It is provided in section 8 that if any question ordinarily determinable at law and requiring a jury trial arise in a suit of which the court of chancery has jurisdiction, a jury trial, if required, may be ordered, but shall be deemed to be waived unless demanded in the pleadings. In case of such de- mand, if the issue be one requiring a jury trial, the court shall send such issue of fact to a court of law for trial according to the existing practice. And the section further provides that the court of chancery shall retain the case until the legal question shall have been determined. Section 9 :

"Any question ordinarily determinable at law, arising in a suit of which the court of chancery has jurisdiction, other than a question re- quiring a jury trial, * * * shall be determined by the court of chan- cery in that suit."

The ultimate relief asked for by complainant in this suit can be obtained only in this court. If, before this court can act, there must be a jury trial, then adequate provision is made there- for in section 8. In the instant case, although proceedings can- not be brought at law to settle the title because the facts which would warrant such an action are not present, yet, under the provisions of section 8, notwithstanding the absence of the facts which would give a court of law original jurisdiction, an issue may be made up and sent to law for determination, and upon the coming in of the judgment at law, upon the issue made up in this court, this court may proceed to give the equitable relief ap- propriate. I am not determining that this case is one requiring

a jury trial. If this court may act under its ordinary jurisdiction, then it seems to me that, there being no method by which the rights of the parties can be settled at law under the ordinary practice, the court may proceed without a jury trial.

In any event, I think there is equity in the bill and the motion to dismiss will be denied.